The next case called for hearing is Eric Schaffner v. Gina Shaffner, now known as Gina Anderson. Mr. Ayers, Mr. Thomas. Mr. Ayers. You have to speak up, Mr. Ayers. There's a blower back there. I can't hear you. I'm Steve Ayers. I'm representing the petitioner, Appellant Eric Schaffner. May it please the Court, The custody judgment entered on December 13, 2011 is not void. That's very clear. That judgment was entered pursuant to a petition to modify custody, which was filed on November 9, 2011, which Gina Anderson acknowledged receipt of on November 10, 2011. Now, there was no notice of hearing of the December 13, 2011 hearing date that was prepared or given to Ms. Anderson. And we admit that, although inadvertent, was erroneous, despite that error. But you're saying that was not jurisdictional? That's correct. Providing a hearing date because you didn't give her a copy of the petition by certified mail. That's correct, Your Honor. Because of that, the judgment is still valid. It's uncontroverted that an order is only void where there's complete lack of jurisdiction in the court to lack the inherent authority to enter the order. In this case, that's not true. The trial court in this case obtained jurisdiction in the underlying divorce proceedings and retained the jurisdiction pursuant to sections 201 and 202 of the Uniform Child and Custody Jurisdiction and Enforcement Act and also section 205 of the Uniform Interstate Family Support Act. Attorney Thomas has argued in his reply brief that, for some reason, those sections of the statute don't apply. I think he argued that if they deal with another trial court obtaining jurisdiction, we would propose to the court that those not only deal with another trial court getting jurisdiction, but also this trial court retaining jurisdiction, exclusive continuing jurisdiction over the parties in the subject matter for purposes of modifying its orders, custody, support, and visitation. Because of that, the lack of the notice of hearing did not strip the trial court of jurisdiction. Attorney Thomas originally argued on behalf of Regina Anderson at the trial court level that Supreme Court Rule 105 would apply in this case. I, of course, cited the case of Mary Mary Ponsar where this court found that Supreme Court Rule 105 did not apply to cases of post-judgment modification of custody and support. Instead, the rule of Supreme Court Rule 104 applies. What about the issue of due process instead of the rules? What about just the issue of notice and opportunity to be heard? Regina Anderson did receive a copy of the Petition for Modification of Custody. But had no idea when it was going to be heard. That's true. So, due process, does it require notice and opportunity to be heard? Due process, in and of itself, does require notice and opportunity to be heard. But the requirement, it's not a jurisdictional requirement, the notice of hearing. And also, it's been held in the case of Hall v. Hall that it is the duty of the litigant to follow the progress of this case. Mere failure of the litigant to be notified is found to not constitute an excuse for his failure to appear. So, there was no lack of due process because Gina Anderson did, in fact, receive a copy of the petition. At that point in time, her daughter had been living with her for over a month. And at the time of the hearing, her daughter had been living with her for two months. She'd known about the petition, which sought a modification of custody, which sought a termination of Eric Schaffner's child support obligation, and which sought child support to be paid from her. She knew about all those things and yet still did nothing. And she didn't seek legal counsel. She didn't file a response. She didn't enter her appearance. She didn't contact a certain clerk's office. She didn't attempt to figure out anything with regard to the case other than doing nothing. Well, the judgment was entered and the judgment was served on her. That's correct. And she received it the following day. That's correct. And didn't do anything within a 30-day period. That's correct as well. I mean, aren't we really talking, what we're talking about here is a procedural matter. What has to be proved on a 2-1401? Because clearly this was beyond the 30 days. That's correct. Now, was there a 2-1401 hearing in this case? There was, Your Honor. I mean, there was no evidence presented or anything like that, right? There was. Was there? There was testimony in a hearing that occurred in December 2012. At that point in time, the trial court heard arguments on a motion to reconsider, a motion to dismiss. I had filed a motion to dismiss. The 1401 action that was denied, I filed a motion to reconsider. Arguments were heard. And then evidence was heard. Gina Anderson took the witness stand and Eric Schaffner also took the witness stand and elicited testimony from both of them. At the conclusion of that hearing, the trial court took the case under advisement and then entered the order. Wasn't that all on the motion to reconsider, the motion to dismiss, though? I mean, was there any point at which notice was given or the trial court said, now we're going to have an evidentiary hearing on the 2-1401 petition? Yes, yes. And that did occur in December 2012. Originally, there was a hearing date in August when the motion to dismiss was argued. And after that was argued, the trial court decided to deny the motion to dismiss. And then there was an order entered in September, early September, not only denying the motion to dismiss but also granting the 1401 petition without an evidentiary hearing. Right, so it had already been granted once before you even got to any kind of a hearing. That's correct. And then that was vacated by the agreement. And then we did have our evidentiary hearing. And at that evidentiary hearing, it was still argued that the custody judgment was void. And that was the only argument that Gina Anderson ever made at the evidentiary hearing is that it's void. In fact, Attorney Thomas argued on her behalf that we don't have to show due diligence. We don't have to show meritorious defense. It's void. After that and after this appeal ensued, Attorney Thomas admitted in his reply that Supreme Court Rule 105 does not apply. In fact, Supreme Court Rule 104 applies. And because of that, Supreme Court Rule 104 states that the failure to deliver or serve copies of papers filed to a clerk does not in any way impair the jurisdiction of the court or the person of the department. Because of that, coupled with the other statutes, jurisdiction was clearly had by the trial court. The court had the inherent power, and the custody judgment is not void. Then we turn to what's required in 1401. Can I just answer your question? I'm sorry to interrupt. In Crawford County, how is notice given in divorce cases of a hearing? Is it left to the lawyers to give notice, or does the clerk issue notice? Usually it's left to the lawyers to give notice. There is a local Rule 9 with regard to notice of motions. But there is nothing with regard to notice of any other pleadings. I'm talking about a notice of hearing on this original petition for custody change. We know she got the petition, but I'm trying to find out what in Crawford County is the custom and practice for getting the notice to the other individual if there's going to be a hearing on that petition. Does the clerk send the notice, or does the lawyer send the notice, or both? Sometimes the clerk does send the notice, but usually when an attorney contacts the clerk's office to set a hearing date, that attorney will then also file a notice of hearing and send that out. And was that done in this case? That was not done in this case. So it would have been your obligation to do that? Yes, it would have been my obligation to do that. So why wasn't that done? It was inadvertent. Because we had filed a petition, we also filed a petition for temporary relief at the same time. We anticipated some sort of response. And when we didn't get that response, the notice requirement of the statute was overlooked, and I moved for default in the judgment. But it would have been in your file, when you show up for the default judgment, or you show up for the hearing, really, it would have been in your file that no notice went out, and you went ahead and proceeded with the default judgment. Why would that be if you knew at the time that you, who were responsible for the notice, didn't give notice? At that point in time, Your Honor, all I can tell the court is I did not read the statute correctly, and I did not know that a notice of that hearing was required since she had received a copy of the petition and had not done anything for more than 30 days. That's the only reason I moved for the default judgment to begin with. You were operating under the presumption that more than 30 days passed, she's in default. However, when you served her with the petition, you didn't serve her with a summons that says you must answer within 30 days or anything like that either. She just got in the mail a petition. Yes, that is correct. I mean, there's no issue about whether that was all wrong. No doubt that was all wrong. This case is about what happened later. That's correct. And that's the point I can make, Your Honor, is that was erroneous. It was inadvertent, but it was erroneous, and we admit that. And that did matter. At some point in time, it did matter. If Gina Anderson had come back in within the 30 days and asked that the judgment be vacated, that would have been a very clear issue. But she did do that within 30 days. Instead, she filed an action under 1401 six months after the judgment was entered. At that point in time, she's required to show three things. One, the existence of meritorious defense. Two, the due diligence on her behalf in bringing that meritorious defense to the trial court. And three, the due diligence in bringing her 1401 action. The lack of notice of hearing as an error only caused that custody judgment to be voidable and not voidable. That's the issue that this whole case turns on, right, whether it was void or voidable. Right. That is correct. At the hearing date, where we did have the adventure of hearing in December 2012, Gina Anderson admitted under cross-examination that the meritorious defense that she would allege is that the minor child came back to visit her sometime in mid-May of 2013, or excuse me, 2012, being five months after the custody judgment was entered. That would not be a meritorious defense to answer the custody judgment because it didn't exist at the time the custody judgment was entered. Also, with that being the meritorious defense that she argued that she might have, she cannot show due diligence in bringing that defense because that defense did not exist at the time the custody judgment was entered. Also, there is an inexplicable delay between Gina Anderson getting a copy of the December 13, 2011 custody judgment and her first action in attempting to have that judgment vacated. In fact, she received a copy of the custody judgment the very next day. She received copies of Uniform Order of Support and notices for withholding from terminating the child support obligation of Eric Schaffner. She quit receiving child support from Eric Schaffner. And she also received notice of withholding purporting to cause her to have a child support obligation. I believe she testified that she didn't do anything about that because she feared it would be taken from her paycheck. When the U.S. Post Office in Newton did not take that child support directly from her paycheck, Eric Schaffner filed and was granted a revocable cause in April of 2012. In response to that, Gina Anderson still took no action to vacate the judgment. Instead, she paid all of her child support and she filed a notice of payment indicating that she complied with the terms of the judgment. Only five weeks after that or three weeks after that notice of hearing or excuse me, that rule of show cause was dismissed by a motion filed by Eric Schaffner, did Gina Anderson make her first attempt to do anything to vacate that judgment by filing the motion to vacate, more appropriately titled Petition to Vacate, on May 29, 2012. The case of Stern v. Forrest, the court held that an unexplained delay in learning of the judgment and bringing it before the Nobel Action shows a lack of due diligence. In the case of Stern v. Forrest, that unexplained delay was a period of time of three months. And also, as this court had ruled in In Re Marriage of Ponzar, the unexplained delay was a period of time of six months. In this case, we have an unexplained period of time of six months between Gina Anderson learning of the judgment and making any action to have that judgment vacated. So because of that, Gina Anderson has no showing of due diligence in the bringing of her 1401 action, no showing of diligence in bringing any meritorious defense, and no meritorious defense argued at all. Gina has asked this court to relax the requirements of due diligence pursuant to the case of Filikowsky v. Larson, but she's provided no compelling reason to do so. The court held that the lack of diligence may only be excused in extraordinary circumstances and only where the underlying judgment is found manifestly unjust. In the case of Filikowsky v. Larson, that was actually a Dramashock action case where two – there were three defendants total. Two of those defendants filed a motion to vacate. After the default judgment was entered, the plaintiff in that case waited ten months to notify those defendants that the default judgment was entered. And then upon notification, they moved to vacate those portions. One of the defendants only held naked legal title to the real estate in which the bar was situated, and the court held that as a matter of law, a party who owns only naked legal title does not have the ability to control that real estate, cannot be found guilty in the Dramashock action. Thank you, Your Honor. Thank you. Mr. Thomas. Thank you, Your Honor. Thank you, Ms. Harris. I'm not going to go through my brief. I believe that if I thought something was significant to present to this court, I would have done it right. But I am going to point out a few things to the court if the court will indulge me. Pursuant to the obligation we as attorneys have to take mandatory and continuing legal education, I took a course in ethics and professionalism dealing with difficult divorces. And in that presentation, we were advised that in domestic cases, especially those involving children, the party should work to try to have a resolution of the case without resorting to the courts. And the question I have, Your Honor, is why are we here? It's uncontroversial that there was a petition for custody filed in November of 2011. That petition was sent to Edith Anderson, Courtney Schaffner, no notice of hearing, no silence, some 32 days later at the fall judgment session. How was that petition sent to her? Certified mail. Certified mail. Certified mail, just the petition, no notice of hearing, no silence. Okay, you know, 610 on modification says notice shall be as under 601C and D. And 601C says notice of a child custody proceeding shall be given to child's parents, et cetera. And then D says proceedings for modification of a previous custody order, more than 30 days following the entry of a previous custody order, must be initiated by serving a written notice and copy of the petition. What does that mean, serving? To me, it means serving. Letting the person know when they're supposed to appear in court. Filed responsibly 30 days after the petition was submitted. But we're going to appear in court on December 12th and we're going to indicate it is that. No doubt about that. But I'm just, does that mean personal service? I think, I would think that personal service honestly would be the best way to do it. I don't know. I don't know if certified mail is sufficient to provide the party with notice. It's been a long time since the judgment of this court's intention. But one of the points I want to bring to this court's attention is that when Gina Anderson filed her motion to make it, which should have been a petition to make it. I agree. At that time, the child was living with Gina Anderson in May of 2012. She lived with her shelter apparently from November or December of 2011 until May of 2012. That's when Gina filed her petition to make it because the child was not living with her. I would point out also that the child has continued to live with her since that date. Now 14 months later, the child is still there. I raise up the opinion that the purpose of Section 601 is to determine and decide where the child is supposed to live. When one seems to modify Procedure 610, we refer to 601 for the Procedure of Power. That was a problem. So why are we here? The child is back within the year and has been for 14 months. And will be 18 within the year. Correct. So one could certainly argue that somebody is spending a lot of money to argue here over a child that's only going to be a child a few more months. But let's get to why is this order void? Pardon me? Why is the order void? Why was the order void? The order was void because she didn't know where she was supposed to go to work. She has no idea that this court proceed is going to take place. That's going to take physical custody away from her. She doesn't know where she's supposed to go. It's like I channel somebody to a tennis match. Don't tell them when it's going to be. I show up. They don't show up. I declare myself the winner. That's what happened in this case. Well, okay. In legal terms, you're saying she was deprived of notice and an opportunity to be heard? Yes. Now, I would also point out to the court that this argument I raised, that from examining the record of what took place in December of 2000, there was no evidence that any custody was presented. So how could a court find by third-degree evidence that there had been a change in circumstances of the child under the custodial care of her mother? I'm going to ask you to stand behind the lectern because we actually record these arguments and there's a microphone there. Okay. That the requirements of Section 610 had been met. There's no transcript of any testimony. There's no indication that a child testified. And the allegations of the petition for the change of custody were that the mother and daughter had arguments. Well, I would say that that's very common. It was common in my home with my wife and my daughter when she was a teenager that they had disagreements about use of the cell phone, study habits, and things of that nature. The other allegation was the child's preference to live with the father. Now, in my brief, we provided many instances of decisions of the state of Illinois that a child's preference alone is not a sufficient reason to change custody. And I further point out that this case is a great example of why that shouldn't control. The child has lived with the father for five or six months. Whatever inducement he had presented to that child to get the child to live with him apparently didn't come to fruition because the child came back to the mother within six months and has been there ever since. So, we feel that the judge was quiet. My client never had the opportunity to know what she had to put in court. In our brief, we've cited situations in the event the court thinks that, determines that this is a 1401 motion that we have to show meritorious offense and due diligence. We cited cases with regard to relaxation of the due diligence requirement, especially cases where the result was unjust, inequitable, unconscionable. And I would represent, to your honors, that taking custody away from a parent when that parent doesn't have the opportunity to be present in court, to even know when she's supposed to be in court, is the type, exactly the type of judgment that would be inequitable, unjust, and unconscionable. Finally, we point out that, pursuant to 610, that the petitioning party seeking a change in custody must show changes in circumstances, must show that because of those changes in circumstances, it serves the best interest of the child that the custody be changed. And finally, that those two factors must be shown by clear and convincing evidence. After the hearing, when testimony was presented in December of 2012, there was no finding by the court that Eric Shaffer had proven his case by clear and convincing evidence. In fact, the child had been back with the mother for eight months at that point. And the court found that the fault does report, because the court had no jurisdiction at the time the judge was there. Your honors, I'm saying I don't know why we're here, but the child's been back with the mother for 14 months, and I appreciate your time and your consideration. Thank you. Mr. Harris. Mr. Harris, I'd like to address a few points very briefly. First, Mr. Thomas has argued to this court that Eric Shaffer did not meet his burden of proof by clear and convincing evidence for the entry of the December 13, 2011, custody judgment. That is the subject of my motion to strike. As Mr. Thomas pointed out in his response to that motion, he's able to, as an appealee, he's able to bring up any issue as long as that factual basis for the issue was before the trial court. That's not the case here. It weren't before the trial court in this Section 214.01 action for a hearing of whether or not Eric Shaffer met his burden of proof on the entry of the custody judgment that was entered December 13, 2011. There was no testimony elicited on that issue. It wasn't brought up at all. So that factual basis is not before this court. And, in fact, what Mr. Thomas is asking this court to do is to review that judgment without having conferred jurisdiction to this court by filing a timely notice of appeal to review whether or not Eric Shaffer met his burden of proof. There was no transcript of that hearing because none was sought. It was not subject to the 14.01 action. Also, with regard to the relaxing of the diligence requirements, rather than going into a recitation of how the cases are distinguished, Paul, I'm going to point out that courts have only done that in instances where there's been some affirmative matter which would render the judgment manifestly unjust against that defendant. Courts have declined to say this is extraordinary circumstances which would be appropriate to relax those diligence requirements in instances only when there's an argument of the facts, which that's what we have here. Also, in relaxing the diligence requirements, that does not absolve a movement from pleading an appropriate meritorious defense. And as we've stated, no meritorious defense existed at the time the judgment was entered. No meritorious defense existed at all. Finally, Mr. Thomas has stated various things here which are not on the record and which are disputed as far as what's happened since this case has come to appeal. I believe what the record showed, Eric Shacker testifying, was that around May 15, 2012 was the first time that the minor child had even visited with her mother in about seven months, not that she was living there. I think the testimony from both parties also shows that the minor child was not going to be involved in the dispute. And, in fact, she sought neutral ground by living primarily with her grandmother while her parents were fighting. Where is she now? With her grandmother. She spends two or three days a week with my client, and it's understood that she spends two or three days a week with the grandmother and maybe a day or two with her mom. But this all resulted from the things that were happening at the mother's house, which caused the minor child's desire to leave, and that's still the case today. When will she be 18? She will be 18, I think, in about eight to ten months, if I'm not mistaken. I don't have her birthday committed to memory, but she's entering her senior year of high school. Thank you very much. Thank you. I will take the case under advisement.